**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**July 2, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CHRISTOPHER WILLIAMS,

Petitioner - Appellant,

v.

STATE OF UTAH,

Respondent - Appellee.

No. 23-4092
(D.C. No. 4:18-CV-00093-DN)
(D. Utah)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **TYMKOVICH**, **BACHARACH**, and **CARSON**, Circuit Judges.
_____

Christopher Williams, a Utah state prisoner appearing pro se, seeks a certificate of appealability ("COA") to challenge the district court's denial of his petition under 28 U.S.C. § 2254 for a writ of habeas corpus. *See* 28 U.S.C. § 2253(c)(1)(A) (requiring a COA to appeal "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court"). We deny Williams's request for a COA and dismiss this matter.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

A jury convicted Williams of aggravated kidnapping and aggravated assault stemming from his involvement in an attempt to collect on a drug debt in January 2011. Williams met the victim and drove him to the home of co-defendant David Nichols. Nichols beat the victim with a walking stick, rendering him unconscious.  Nichols and Williams tied the victim to a chair and threatened to kill him.  They took the victim's wallet, cell phone, coat, shoes, and a food stamp card worth several hundred dollars. Williams then retrieved the victim's car and the title to it, and Nichols forced the victim to sign a bill of sale transferring title to Williams.  Williams and another co-defendant, Max Dozah, then drove the victim up a canyon, threatening him during the drive.  Dozah threatened to break the victim's legs or kill him with a metal pipe that was in the car. Eventually they stopped at a snow closure gate in the canyon and made the coatless victim get out.  Dozah asked Williams to get the pipe from the car.  Williams held the pipe out the window for Dozah, but Dozah never took it.  After Dozah shouted threats at the victim, Dozah and Williams drove off, leaving the victim behind in the freezing canyon.  The victim flagged down someone, who called for help.  The police responded, and the victim was transported by ambulance to a hospital with rope burns on his arms and multiple bruises and contusions on his face and arms.

The jury convicted Williams of aggravated kidnapping and aggravated robbery but acquitted him of aggravated assault.  He was sentenced to consecutive sentences of fifteen years to life for the aggravated kidnapping conviction and five years to life for the aggravated robbery conviction.  The Utah Court of Appeals affirmed.  *See State v.*

2

*Williams*, 333 P.3d 1287, 1289 (Utah Ct. App. 2014), *cert. denied*, 343 P.3d 708 (Utah 2015). Williams filed a petition for post-conviction relief ("PCP"). The state district court ("PCP court") denied relief. *See* R., Vol. 1 at 545–64. The Utah Court of Appeals affirmed in a summary disposition. *See id.* at 565–69. The Utah Supreme Court denied review. *Williams v. State*, 429 P.3d 465 (Utah 2018).

Williams next filed a petition under § 2254 for a writ of habeas corpus. He advanced eight grounds for relief. The district court denied relief on all grounds and denied a COA. Before us, Williams seeks a COA on grounds 5 (failure to provide jury instructions on lesser included offenses), 6 (flawed aggravated kidnapping instruction), 7 (sentencing error), and 8 (ineffective assistance of counsel).

## II. COA AND AEDPA REQUIREMENTS

We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the applicant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims the district court denied on a procedural ground without reaching the merits, the applicant must also show that the district court's procedural ruling is debatable. *Id.*

Our consideration of Williams's request for a COA must account for the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which requires "deferential treatment of state court decisions." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004). We therefore "look to the District Court's application of AEDPA to

3

[Williams's] constitutional claims and ask whether that resolution was debatable amongst jurists of reason." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). Under AEDPA, when a state court has adjudicated the merits of a claim, a federal court may grant habeas relief only if that state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

### III. DISCUSSION[1]

### A. Grounds 5 and 6

### 1. Procedural Default

In his PCP, Williams argued that the trial court, the prosecution, and defense counsel erred by failing to provide or request jury instructions on lesser included offenses of aggravated kidnapping (namely, unlawful detention and kidnapping) and aggravated robbery (namely, theft), depriving him of a due process right to present a complete defense. He also argued that a jury instruction on aggravated kidnapping omitted elements of the primary offense of kidnapping.

The PCP court ruled that Williams's failure to raise the claims on direct appeal barred post-conviction review under Utah Code Ann. § 78B-9-106(1)(c), which provides: "A petitioner is not eligible for relief under [the Utah Postconviction Remedies Act] upon

---

[1] Because Williams represents himself, we construe his filings liberally, but we may not act as his advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

4

any ground that . . . could have been but was not raised in the trial court, at trial, or on appeal." The Utah Court of Appeals affirmed that ruling.

Williams raised these claims in Grounds 5 (lesser included offense instructions) and 6 (aggravated kidnapping instruction) of his § 2254 petition. The district court concluded those grounds were procedurally defaulted on an independent and adequate state law ground. *See Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991) (explaining that "the independent and adequate state ground doctrine . . . applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement").

In his COA application, Williams advances no argument that § 78B-9-106(1)(c) is not independent or adequate.[2] The only contention he makes that touches on the district court's invocation of procedural default is that the state courts "[a]buse[d]" the procedural bar, which he claims is too "narrow in scope with no circumventions or statutory protections against blanket bar application" and creates an "impossible burden[]." COA Appl. at 2. But § 78B-9-106(3)(a) and (b) provide exceptions to the bar when the failure to raise an issue in the trial court, at trial, or on appeal "was due to ineffective assistance of counsel" or "to force, fraud, or coercion." Thus, to the extent Williams meant his argument to question the independence or adequacy of § 78B-9-106(1)(c), it fails to show that reasonable jurists would debate the district court's

---

[2] "A state procedural default is independent if it relies on state law, rather than federal law." *Black v. Workman*, 682 F.3d 880, 918 (10th Cir. 2012) (internal quotation marks omitted). "[T]o qualify as an adequate procedural ground, a state rule must be firmly established and regularly followed." *Id.* at 916 (internal quotation marks omitted).

conclusion that Grounds 5 and 6 were procedurally defaulted on an independent and adequate state law ground.

### 2.    Failure to Overcome Procedural Default

A federal habeas petitioner can overcome procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law" or "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  We address these exceptions in order.

### a.  Cause and Prejudice Exception

In his PCP and again in his § 2254 petition, Williams argued that his trial and appellate counsel rendered constitutionally ineffective assistance with respect to both grounds.  Ineffective assistance of counsel can serve as cause to excuse a procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000).  To establish ineffective assistance of counsel, an applicant must show (1) constitutionally deficient performance that (2) resulted in prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

The PCP court held that Williams failed to establish either prong of the *Strickland* test as to both procedurally defaulted claims and therefore could not overcome the procedural bar.  The Utah Court of Appeals agreed.  Because the state court addressed the ineffectiveness claims on the merits, AEDPA "confines our review to the question of whether the [state court's] decision was contrary to or involved an unreasonable application of *Strickland*." *Turrentine v. Mullin*, 390 F.3d 1181, 1202 (10th Cir. 2004).

Thus, in the COA inquiry, we ask whether reasonable jurists could debate the district court's conclusion regarding the state court's *Strickland* analysis.[3]

### 1) Ground 5—lesser included offense instructions

The district court concluded that Williams failed to show his counsel was ineffective by failing to request lesser included offense instructions. The court observed that Utah courts apply a two-stage test to determine whether a lesser included offense instruction is required: (1) there must be "some overlap in the statutory elements of allegedly included offenses," *State v. Baker*, 671 P.2d 152, 159 (Utah 1983) (citing Utah Code Ann. § 76-1-402(3)(a)); and (2) the evidence must "provide[] a 'rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense,'" *id.* (quoting § 76-1-402(4)).[4]

Noting that Williams had analyzed only the first of the two stages, the district court recounted that two versions of events were presented at trial. In one version, the

---

[3] As we proceed to discuss, the district court determined that Williams had not shown ineffective assistance that would allow him to overcome the procedural default. But the court did not expressly focus its cause-and-prejudice analysis through this AEDPA lens. However, in its later consideration of Williams's other claims of ineffective assistance, the district court applied AEDPA and concluded that he "failed to show that the state courts unreasonably applied *Strickland* in rejecting *any* of his claims of ineffective assistance of counsel." R., Vol. 2 at 712 (emphasis added). We therefore treat the district court's determination that Williams failed to establish cause and prejudice through ineffective assistance of counsel as equivalent to a determination that the state court rulings were not contrary to or an unreasonable application of *Strickland*.

[4] This test applies to a defendant's request for the instruction. *See State v. Norton*, 481 P.3d 445, 455 (Utah 2021). A different standard (the "necessarily included offense" standard) applies when the prosecution requests a lesser included offense instruction. *See Baker*, 671 P.2d at 156.

victim testified that Williams was present for, but did not participate in, the assault with the walking stick, but he actively participated in the robbery and the kidnapping. In the other version, Williams and Nichols both testified that Williams did not participate in any of the charged offenses. Thus, the district court concluded that counsel's "decision not to request lesser included instructions was within the wide range of professionally reasonable assistance" because requesting them "would have undermined [Williams's] total innocence defense." R., Vol. 2 at 693. The court further concluded that Williams could not demonstrate *Strickland* prejudice "because there was no rational basis for a conviction on lesser included charges even if they had been requested." *Id.*

In his COA application, Williams does not engage with the district court's reasoning regarding the evidence or its application of *Strickland*. He instead points out that a lesser included offense includes one "specifically designated by a statute as a lesser included offense," § 76-1-402(3)(c), and at the time of the crimes, kidnapping and unlawful detention were defined by statute as lesser included offenses of aggravated kidnapping, *see* Utah Code Ann. § 76-5-306 (repealed 2022).

This argument overlooks that even when a statute specifically designates an offense as a lesser included offense (as § 76-5-306 did), the second stage of Utah's test still must be satisfied. For example, in *State v. Norton*, 481 P.3d 445 (Utah 2021), the Utah Supreme Court observed that "[u]nlawful detention is statutorily defined as a lesser included offense of aggravated kidnapping." *Id.* at 456. But it then went on to analyze the evidence and concluded the trial court was not obligated to instruct the jury on unlawful detention because "the evidence before the jury provided no rational basis for a

8

verdict acquitting Norton of aggravated kidnapping and instead convicting him of unlawful detention." *Id.* at 457. Thus, Williams's argument fails to show that reasonable jurists would debate the district court's conclusion that his counsel's failure to request lesser included offense instructions did not amount to ineffective assistance of counsel or that the Utah Court of Appeals' ruling on this issue was contrary to or an unreasonable application of *Strickland*. *See United States v. Babcock*, 40 F.4th 1172, 1177 (10th Cir. 2022) (explaining that "if an argument is meritless, it is likely that the failure to raise it was not deficient performance," but "the lack of merit establishes that the defendant was not prejudiced by the failure to argue the point, thereby defeating [an] ineffective-assistance claim").

### 2) Ground 6—aggravated kidnapping instruction

Under Utah law, two of the five ways kidnapping can occur is if a defendant "detains or restrains the victim for *any substantial period of time*" or "detains or restrains the victim *in circumstances exposing the victim to risk of bodily injury*." Utah Code Ann. § 76-5-301(1)(a)–(b) (effective to May 3, 2022) (emphasis added).[5] In both his PCP and in Ground 6, Williams argued that a jury instruction on aggravated kidnapping omitted the italicized phrases in the foregoing quotations and that counsel's failure to object at trial or raise the omission on direct appeal amounted to ineffective assistance. His theory was that because aggravated kidnapping requires the commission of a kidnapping (plus

---

[5] We cite to the version of the Utah statutes in effect at the time of Williams's offenses. However, as relevant to this case, the only difference between those versions and the current version is that subsections have been renumbered.

any one of a number of other actions), *see* Utah Code Ann. § 76-5-302(1) (effective to May 13, 2019), the omission of the subject phrases lessened the State's burden of proof in violation of his due process rights.

Applying *Strickland*, the PCP court reasoned that because kidnapping "does not require the victim to be detained for any minimum period of time," the jury instruction had correctly stated the law, and counsel's failure to object to a correct instruction was "not deficient performance." R., Vol. 1 at 558–59 (internal quotation marks omitted). The court also determined Williams could not show *Strickland* prejudice because the evidence showed the victim had been detained for twelve hours. Employing the same reasoning, the Utah Court of Appeals affirmed.

The district court resolved this issue on *Strickland*'s prejudice prong, concluding that Williams could not show prejudice because he could not "support the proposition that the twelve-hour captivity would fall below the threshold for 'a substantial period of time.'" R., Vol. 2 at 695 (quoting § 76-5-301(1)(a)).

In his COA application, Williams argues that it "is a legal impossibility" that he could be found guilty of aggravated kidnapping because the jury acquitted him of aggravated assault and he was not charged with constructive possession of a dangerous weapon by a restricted person. COA Appl. at 8. We fail to see how this shows the Utah Court of Appeals' ruling was contrary to or an unreasonable application of *Strickland* with respect to the omitted phrase "any substantial period of time." It does, however, bear on the other omitted phrase—"in circumstances exposing the victim to risk of bodily injury," § 76-5-301(1)(b). Neither of the state courts addressed the omission of this

10

phrase.[6]  But the reason is obvious.  The evidence showed Williams was involved in detaining the victim for twelve hours, a duration he has not shown to be insubstantial for purposes of finding the victim was kidnapped within the meaning of § 76-5-301(1)(a).  Thus, the failure to instruct the jury that it could *also* find Williams committed kidnapping if it found he detained the victim "in circumstances exposing the victim to risk of bodily injury" would not have prejudiced Williams because he participated in a detention that lasted for a substantial period of time.  Hence, counsel's failure to object to the omission of the "risk of bodily injury" phrase from the jury instructions does not constitute ineffective assistance under *Strickland*.[7]

---

[6] The district court determined it could not review the state court's ruling that aggravated kidnapping does not require any minimum duration of detention because that ruling involved a matter of state law.  *See* R., Vol. 2 at 694; *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  For the same reason, the district court declined to consider whether, in the absence of the phrase "a substantial period of time," the instructions should have required proof of "circumstances exposing the victim to risk of bodily injury" or of any of the other alternative ways by which kidnapping could occur under § 76-5-301(1).  *See* R., Vol. 2 at 694.

[7] In his COA application, Williams makes a number of other assertions regarding the "risk of bodily injury" phrase, including that he did not know a beating was going to occur; Nichols beat the victim when Williams was not present; Williams feared Dozah and was merely following his order to retrieve the pipe from the car, but Dozah never took the pipe; and "[t]here was only scant circumstantial evidence (at best) showing [Williams] had the requisite mental state to commit any crime," COA Appl. at 10.  None of these assertions alters our conclusion about omission of the "risk of bodily injury" phrase from the jury instructions.

### b. Miscarriage of Justice Exception

The fundamental miscarriage of justice exception to the procedural default rule "is a markedly narrow one, implicated only in extraordinary cases where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Magar v. Parker*, 490 F.3d 816, 820 (10th Cir. 2007) (brackets and internal quotation marks omitted). In this context, an actual innocence "claim must be credible and requires new reliable evidence . . . that was not presented at trial." *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) (internal quotation marks omitted).

The district court concluded that most of the evidence Williams relied on had already been presented to the jury. But the court considered Williams's claim that his counsel should have more aggressively cross-examined the victim through reference to the victim's initial vague, contradictory, and unsworn statements to police. In these statements, the victim initially told police that he had gone to a house (apparently Nichols's house) to confront drug dealers about the way they were treating his step-daughter and was then beaten, tied to a chair, and forced to sign over title to his car. *See* R., Vol. 1 at 152. The victim also stated he was afraid of those who had beaten him and tied him up. *See id.* at 153. The victim then changed his story, claiming he was lured to the house to settle a drug debt and beaten because of that debt. *See id.* at 153-54.

The court analyzed the victim's initial statements to police in terms of ineffective assistance of counsel:

> A reasonable juror might reasonably have believed that the victim told the
> truth at trial even though at th[e] time he was rescued by police, suffering
> from the immediate trauma of twelve hours of captivity and abuse, the

victim initially lied to the police to avoid confessing his own liability in criminal activity, or to avoid retribution by [Williams] and the other captors whose whereabouts were at that time unknown.

R., Vol. 2 at 696. Thus, the court concluded, Williams's "counsel might reasonably have believed that the risks of challenging the victim's testimony based on the unsworn statements made in those circumstances outweighed the potential benefits to [Williams's] defense." *Id.*

Williams has not shown that reasonable jurists would debate the district court's conclusion regarding ineffective assistance of counsel with respect to the victim's initial statements to police. And, for the same reasons the district court gave regarding ineffective assistance, we conclude that reasonable jurists would not debate whether the failure to cross-examine the victim about his initial statements to police probably resulted in the conviction of one who is actually innocent.

\* \* \* \* \*

In sum, Williams has not shown reasonable jurists would debate the district court's determination that Grounds 5 and 6 are procedurally defaulted and that he failed to demonstrate that the default should be excused. Accordingly, we deny a COA on Grounds 5 and 6.

## B. Ground 7

In his PCP, Williams argued that the trial court denied him due process by failing to conduct the interests-of-justice analysis set out in the aggravated-kidnapping statute, Utah Code Ann. § 76-5-302(4) (effective to May 13, 2019), which permits a lesser sentence than the statutory sentencing ranges set out in § 76-5-302(3)(a)–(b). Williams

13

also argued that the trial court failed to follow Utah Code Ann. § 76-3-401(2) and (3), which lists factors the sentencing court is to consider when determining whether to run sentences concurrently or consecutively. He further claimed trial and appellate counsel were ineffective with respect to these issues.

The PCP court observed that at the time of Williams's trial, Utah courts considered the interests-of-justice analysis to be a discretionary aspect of sentencing for aggravated kidnapping. But the PCP court acknowledged that two years after Williams was sentenced, the Utah Supreme Court decided that the interests-of-justice analysis was mandatory. Thus, the PCP court decided that any failure by counsel with respect to such an analysis was not deficient performance under *Strickland* because counsel could not have anticipated the later development in the law. The PCP court also concluded that Williams could not show *Strickland* prejudice because he was actively involved in the kidnapping, Nichols had rendered the victim unconscious, dangerous weapons were present, and Williams was on parole at the time and had violated parole several times.

As to the consecutive sentences, the PCP court determined it was reasonable to assume the trial court had considered the statutory factors, and Williams had not shown counsel's failure to object to the sentence amounted to deficient performance under *Strickland*. The PCP court further concluded that Williams had not shown a reasonable probability that an objection would have led to a different sentencing outcome.

Applying the same analysis, the Utah Court of Appeals affirmed.[8]

Williams raised the same arguments in Ground 7 of his § 2254 petition. The district court concluded that he failed to raise an issue of clearly settled federal law. The court explained that "there is no federal right to an interests of justice analysis at sentencing," and that Williams had offered no "authority for the proposition that his consecutive sentencing as a parolee offends federal due process rights."[9] R., Vol. 2 at 709.

In his COA application, Williams does not address the basis of the district court's ruling. He instead merely repeats his assertions of trial court error. He therefore has not met his burden to show reasonable jurists would debate the district court's ruling on the merits of Ground 7. Nor do we see any reason they would. *See United States v. Horn*, 946 F.2d 738, 746 (10th Cir. 1991) ("We have rejected the notion that a defendant has a due process right to a discretionary, individualized sentence in a noncapital case . . . ."); *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) ("We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law."). We therefore deny a COA on Ground 7.

---

[8] Although the state courts analyzed Williams's arguments in terms of ineffective assistance, their analysis makes plain that they also concluded the underlying claims of failure to follow § 76-5-302(4) and § 76-3-401(2) and (3) were meritless.

[9] The Utah statute requires sentences to be consecutive "if the later offense is committed while the defendant is imprisoned or on parole, unless the court finds . . . that consecutive sentencing would be inappropriate." § 76-3-401(3).

## C.  Ground 8

In addition to the ineffectiveness claims we have already discussed, Williams asserted in his PCP many other claims of ineffective assistance of trial and appellate counsel.  The PCP court observed that many of those claims (including failure to prepare and investigate the case or the relevant law, and failure to properly use available defense evidence) were no more than "bare allegations and conclusory claims" and, as such, insufficient to establish either prong of the *Strickland* test.  R., Vol. 1 at 562.  As to Williams's claim of prosecutorial misconduct on cross-examination, the PCP court determined that he had identified no genuine or specific instances of misconduct that could have been raised on direct appeal or any prejudice from the failure to do so.  Regarding his claim that counsel should have tested the rope for DNA, the PCP court pointed out that trial counsel addressed the lack of DNA testing during cross-examination and that the State's evidence showed Williams had participated "in tying the victim to the chair with the rope."  *Id.* at 563.  As for Williams's claim that his appellate counsel should have requested remand under Utah R. App. P. 23B to develop claims of ineffective assistance of trial counsel, the PCP court determined that Williams had not shown "appellate counsel could have properly made a 23B request," *id.*, which "allows supplementation of the record, in limited circumstances, with nonspeculative facts *not fully appearing in the record that would support the claimed deficient performance*," *id.* (internal quotation marks omitted).  The court further determined that Williams failed to show that even if appellate counsel had made a Rule 23B request, the outcome would have been different.

For the same reasons, the Utah Court of Appeals affirmed the denial of relief on all these claims.

The district court concluded that the state courts had reasonably applied *Strickland*'s ineffective-assistance standard and that Williams had not even addressed that standard or provided "any analysis showing that his counsel failed to meet that standard, nor any analysis showing that the state courts unreasonably applied [it]." R., Vol. 2 at 711.

In his COA application, Williams merely advances the identical lengthy list of conclusory allegations of ineffective assistance set out in his PCP and § 2254 petition. He does not explain how counsel failed to meet the *Strickland* standard or why reasonable jurists would debate the district court's conclusion that the state courts had not unreasonably applied *Strickland*. He therefore has not met his burden to obtain a COA on Ground 8.

### D. Other Arguments

Williams also argues that the district court violated his due process rights by dismissing his § 2254 petition five years after it was filed and because he named the wrong respondent. But the length of time it took the district court to adjudicate the petition is no grounds for a COA or other relief on appeal. And the district court did not dismiss the petition because Williams named the State of Utah as the respondent. To the contrary, the district court assumed Williams meant to name the warden of the prison where he is incarcerated. *See* R., Vol. 2 at 673 n.1; *see also* Rule 2(a), Rules Governing Section 2254 Cases ("If the petitioner is currently in custody under a state-court

judgment, the petition must name as respondent the state officer who has custody.").

Williams also asserts the district court erred by dismissing his petition as frivolous and

without giving the State a chance to respond. These assertions are incorrect. The State

filed an answer to the petition, and the district court denied the petition after an extensive

analysis of the parties' arguments.

## IV.  CONCLUSION

We deny a COA and dismiss this matter. We grant Williams's motion for leave to

proceed on appeal without prepayment of costs or fees.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge